UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MACCO PROPERTIES, INC., | ) | Case No. 10-16682-R |
| | ) | Chapter 7 |
| | ) | |
| NV BROOKS APARTMENTS, LLC, | ) | Case No. 10-16503-R |
| | ) | Chapter 7 |
| Debtors. | ) | (Jointly Administered) |

| | |
|---|---|
| MICHAEL E. DEEBA, TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 12-1118-R |
| ) | |
| PINKERTON & FINN, P.C., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| COBBLESTONE APARTMENTS ) | |
| OF TULSA, LLC; LARRY D. AND ) | |
| JEANETTE A. JAMISON FAMILY ) | |
| TRUST; AND JACKIE L. HILL, JR., ) | |
| ) | |
| Intervenors. ) | |

### RECOMMENDATION TO DISTRICT COURT THAT
### DEFENDANT'S MOTION TO WITHDRAW REFERENCE BE DENIED

Before the Court is the Defendant's Motion to Withdraw the Bankruptcy Reference of This Case and to Transfer it to the U.S. District Court for the Western District of Oklahoma for Further Proceedings and a Jury Trial (Adv. Doc. 24) filed by Defendant Pinkerton & Finn, P.C. ("P&F") on July 15, 2013 ("Motion"); Plaintiff's Response thereto

(Adv. Doc. 29) filed by Plaintiff Michael E. Deeba, Trustee ("Trustee") on July 29, 2013; and Defendant's Reply (Adv. Doc. 32) filed on August 12, 2013 ("Reply").[1]

P&F contends that cause exists to withdraw the automatic reference of this proceeding to this Court because (1) P&F is entitled to a jury trial and does not consent to the bankruptcy court conducting a jury trial, and (2) this Court does not have constitutional authority to enter a final order.

The procedural facts and law relevant to P&F's Motion are as follows:

1.  On November 2, 2010, Macco Properties, Inc. ("Macco") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Macco's president, Lew S. McGinnis ("McGinnis"), assumed the duties and responsibilities of the debtor-in-possession.

2.  Seven months later, on May 31, 2011, the bankruptcy court approved the appointment of Trustee as Chapter 11 Trustee of the Macco bankruptcy estate.

3.  On October 17, 2012, Trustee filed a Complaint[2] to avoid and recover $61,288.05 in payments McGinnis made to P&F in mid-November 2010. Trustee alleges that these payments constituted unauthorized post-petition transfers of property of the Macco estate.

---

[1] The Motion has been under advisement since August 2013. In September 2013, it appeared that this adversary proceeding (and others) would be voluntarily dismissed based upon projections that the Macco bankruptcy estate would have sufficient funds to pay all allowed claims, eliminating the need to recover alleged unauthorized transfers. At this point, however, because allowed administrative claims against the estate exceed the estate's cash balance, it has been determined that dismissal is not in the best interests of creditors.

[2] Adv. Doc. 1.

4. The statutory basis for avoiding post-petition transfers of estate property is 11 U.S.C. § 549(a), which states:

> Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–
>
>  (1) that occurs after the commencement of the case; and
>
>  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
>   (B) that is not authorized under this title or by the court.[3]

5. The statutory basis for recovering avoided transfers is 11 U.S.C. § 550(a), which provides–

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.[4]

6. Bankruptcy Rule 9015 incorporates Rule 38 of the Federal Rules of Civil Procedure to provide procedures for asserting a right to jury trial in bankruptcy courts. Rule 38 provides, in pertinent part–

---

[3] 11 U.S.C. § 549(a). The exceptions stated in subsections (b) (regarding transfers in involuntary cases) and (c) (regarding transfers of real property) are inapplicable in this case.

[4] 11 U.S.C. § 550(a).

    (b)    Demand. On any issue triable of right by a jury, a party may demand a jury trial by:

        (1) serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served; and

        (2) filing the demand in accordance with Rule 5(d).

*****

    (d)    Waiver; Withdrawal. A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.[5]

7.    On December 4, 2012, P&F filed its Answer[6] to the Complaint. The Answer does not contain a jury trial demand. The Answer was the last pleading[7] directed to Trustee's claim for avoidance and recovery of the post-petition transfers, and P&F failed to file a jury demand within fourteen days of the Answer.

8.    On May 10, 2013, P&F signed and filed a document styled Jury Trial and Jurisdictional Acknowledgments and Consents (a local form) indicating that–

[t]he parties acknowledge and consent to the following:

1. ✓ No party has timely demanded a jury trial. . . .

2. ✓ As evidenced by their signatures below, each party consents to entry of final orders and judgments by this Court on any issue in this adversary proceeding, whether or not designated as "core" under 28 U.S.C. § 157(b).*

---

[5]Fed. R. Civ. P. 38(b) and (d).

[6]Adv. Doc. 8.

[7]See "Pleadings Allowed," Fed. R. Civ. P. 7(a), made applicable to adversary proceedings by Bankruptcy Rule 7007.

4

The asterisk was hand-written on the document and referred to the following hand-written caveat:

> *No waiver is made for rights under Stern v. Marshall, 564 U.S. __, 131 S.Ct. 2594 (2011).[8]

9. Notwithstanding its admission that it had not timely demanded a jury trial, P&F argues that its right to a jury trial is grounds for withdrawal of the reference of this proceeding.

10. P&F has not filed a claim against the estate.

11. The underlying bankruptcy case has been pending since 2010, and this proceeding has been pending since 2012. Although this adversary proceeding was not assigned to the undersigned bankruptcy judge until January 2015, this Court is intimately familiar with the entirety of the bankruptcy case after hearing and determining the contested final fee applications of Trustee and his professionals, and various tort claims asserted against Trustee and his professionals by former management of the debtor.

**Recommendation No. 1:   The District Court should find and conclude that P&F is not entitled to a jury trial and therefore withdrawal of the reference is not mandatory.**

If a litigant is entitled to a jury trial and does not consent to the bankruptcy court conducting a jury trial,[9] the reference must be withdrawn and the proceeding must be transferred to the District Court when the matter is ready for trial.[10]   P&F contends that

---

[8] Adv. Doc. 21.

[9] 28 U.S.C. § 157(e) (bankruptcy courts may conduct jury trials with the consent of all parties).

[10] See, e.g., Dunmore v. United States, 358 F.3d 1107, 1116-17 (9th Cir. 2004).

Trustee's claim for recovery of alleged post-petition transfers under § 549(a) is "a contract dispute thinly disguised . . . as a § 549 case" – a legal issue to which a jury trial right attaches.[11]

The Seventh Amendment of the United States Constitution "preserved" the right to a jury trial "in Suits at common law."[12] Determining whether a litigant is entitled to a jury trial requires a court to "look to whether the action would have been one at law or equity in the Eighteenth Century courts of England, whether the nature of the relief is primarily legal or equitable, or whether the action is one that is not equitable in nature but which Congress has assigned to a non-Article III adjudicative body."[13] The Tenth Circuit Court of Appeals has held that "enforcement of Section 549, a provision clearly designed to protect the bankruptcy estate following its inception, is a procedure which is equitable in nature."[14] The remedies inherent in §§ 549 and 550 – avoidance and recovery of property of the bankruptcy estate – did not exist at common law and were created by Congress as part of a statutory scheme that bankruptcy courts – non-Article III adjudicative bodies – have been given the power to enforce.[15] Accordingly, P&F is not entitled to a jury trial on Trustee's claim to avoid and recover unauthorized transfers of estate property under §§ 549(a) and 550(a).

---

[11] Reply at 1.

[12] U.S. Const. amend. VII.

[13] Jobin v. Youth Benefits Unlimited, Inc. (In re M & L Bus. Mach. Co.), 59 F.3d 1078, 1082 (10th Cir. 1995), *citing* Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989).

[14] Jobin, 59 F.3d at 1082.

[15] Id.

6

In any event, P&F did not timely request a jury trial. It did not file a jury demand in its Answer, with its Answer, or within fourteen days of its Answer, as required by Rule 38.[16] In May 2013, seven months into the proceeding, P&F acknowledged that "no party has timely demanded a jury trial."[17] Not until July 2013, upon its filing of the Motion, did P&F claim a right to trial by jury. Accordingly, even if Trustee's claim were triable to a jury, P&F waived its right to a jury by failing to timely demand one.

**Recommendation No. 2: The District Court should conclude that the Bankruptcy Court has constitutional authority to hear this proceeding and enter a final order.**

In its Jury Trial and Jurisdictional Acknowledgments and Consents document, P&F "consent[ed] to entry of final orders and judgments by this Court on any issue in this adversary proceeding, whether or not designated as 'core' under 28 U.S.C. § 157(b)," but reserved its "rights under Stern v. Marshall, 564 U.S. – , 131 S.Ct. 2594 (2011)."[18] The caveat raises the issue of whether the holding in the Stern case gives P&F the right to demand adjudication by an Article III judge.

Article III of the United States Constitution mandates that "[t]he judicial Power of the United States[] shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."[19] To provide the federal judiciary independence from influence or control by the other branches of government, judges of such

---

[16] Fed. R. Civ. P. 38(b).

[17] Adv. Doc. 21.

[18] Id.

[19] U.S. Const., art. III, § 1.

courts enjoy lifetime tenure and salary protection.[20] Only such tenured judges may exercise the judicial power of the United States.

Article I of the United States Constitution grants Congress the power to establish a uniform bankruptcy scheme applicable in all states.[21] Article I also empowers Congress to "constitute Tribunals inferior to the supreme Court"[22] and "clothe them with functions deemed essential or helpful" to executing any legislative scheme that Congress has the power to enact.[23] Congress may assign Article I courts adjudicatory powers to vindicate matters of "public rights."[24] Public rights are, among other things, rights and remedies created by Congress through a statutory scheme.[25] For rights that would not exist but for Congressional action, Congress has authority under Article I to establish tribunals in which the right may be vindicated.[26] Accordingly, Congress has, under its Article I powers, created bankruptcy

---

[20] Id.

[21] U.S. Const. art. I, § 8.

[22] Id.

[23] Ex parte Bakelite Corp., 279 U.S. 438, 449 (1929).

[24] Stern v. Marshall, 131 S.Ct. 2594, 2612 (2011).

[25] Although "Congress cannot 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty . . . , [a]t the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which [C]ongress may or may not bring within the cognizance of [Article III courts], as it may deem proper.'" Id., quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284 (1856). Because "[i]n those cases, 'it depends upon the will of [C]ongress whether a remedy in the courts shall be allowed,' . . . Congress may set the terms of adjudicating a suit when the suit could not otherwise proceed at all." Id.

[26] Adjudication by non-Article III courts is constitutional where "the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert

8

courts to supervise the administration of bankruptcy estates, to carry out and enforce bankruptcy laws, and to adjudicate certain disputed issues that arise in bankruptcy cases.

Under the current legislative regime, Congress assigned to the United States District Courts original and exclusive jurisdiction over cases under title 11 of the United States Code i.e., bankruptcy cases), and over all property of a bankruptcy estate,[27] and original but not exclusive jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11."[28] District courts may refer all the above-described matters and proceedings to bankruptcy courts.[29] The District Court for the Western District of Oklahoma has referred "any and all" such proceedings to the bankruptcy judges via Local Civil Rule 81.4(a).

Under the statutory scheme, bankruptcy courts, upon referral, have the authority to hear and determine by final orders all so-called "core" proceedings.[30] A non-exclusive list of "core" proceedings is set forth in 28 U.S.C. § 157(b)(2). Trustee's claim against P&F is a "core" proceeding under the statute.[31] P&F's argument for withdrawal of the reference

---

government agency is deemed essential to a limited regulatory objective within the agency's authority." Id. at 2613.

[27]28 U.S.C. § 1334(a) and (e)(1).

[28]Id. § 1334(b).

[29]See id. § 157(a). Bankruptcy courts "constitute a unit of the district court" and bankruptcy judges are "judicial officer[s] of the district court" to whom bankruptcy matters may be referred. Id. § 151.

[30]Id. § 157(b)(1).

[31]"Core proceedings include, but are not limited to – . . . orders to turn over property of the estate." Id. § 157(b)(2)(E).

9

draws life from the United States Supreme Court's decision in the <u>Stern</u> case, wherein the Court held that a claim that falls within the traditional judicial power of Article III judges cannot be assigned by Congress to a non-Article III court simply by designating the claim as "core."

In <u>Stern</u>, the debtor in possession, on behalf of the bankruptcy estate, asserted a state-law counterclaim (tortious interference with the expectation of gift) against a creditor who filed an adversary proceeding against the estate seeking damages for defamation. Because "counterclaims by the estate against persons filing claims against the estate" are "core" proceedings under 28 U.S.C. § 157(b)(2)(C), it was undisputed that the bankruptcy judge in <u>Stern</u> had statutory authority to enter a final judgment on the estate's tortious interference claim. The Supreme Court concluded, however, that even though the bankruptcy judge had *statutory* authority to enter a final order, the creditor had a constitutional right to insist upon adjudication by Article III judge because of the nature of the counterclaim and its tenuous relationship to the bankruptcy case. Adjudication of the tortious interference claim constituted an exercise of judicial power,[32] and, the Court held in <u>Stern</u>, Congress could not constitutionally refer such a claim to a non-Article III court for final adjudication under its Article I powers. Because this counterclaim did not "stem[] from the bankruptcy itself" nor would it "necessarily be resolved in the claims allowance process,"[33] the statute was

---

[32]"When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789' . . . the responsibility for deciding that suit rests with Article III judges."  <u>Stern</u>, 131 S.Ct. at 2609, *quoting* <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50, 90 (1982) (plurality opinion).

[33]<u>Stern</u>, 131 S.Ct at 2618.

10

overbroad in classifying *all* counterclaims asserted by the estate against a creditor as "core" functions of the bankruptcy court. Relevant to the Court's determination that the creditor was entitled to adjudication of the estate's counterclaim by an Article III court were the facts that the estate's claim predated the bankruptcy, would have existed even in the absence of the bankruptcy, was not intertwined with the resolution of an issue of bankruptcy law, and was unrelated to the defamation claim asserted by the claimant against the estate.[34]

Trustee's action to recover post-petition transfers of alleged estate property from P&F is classified as a "core" proceeding under 28 U.S.C. § 157(b)(2),[35] and therefore this Court has statutory authority to hear and determine the claim. Unlike Stern, however, this Court also has constitutional authority to hear and finally determine the claim. Trustee's claim is not a state law contract or tort claim, and the claim did not predate the bankruptcy. The claim "flow[s] from a federal statutory scheme"[36] created by Congress pursuant to its authority under the Constitution to establish uniform bankruptcy laws. A claim to recover property transferred out of the bankruptcy estate does not exist in the absence of a bankruptcy case, and resolution of the claim requires application of bankruptcy law. Because

---

[34]The counterclaim in Stern "involve[d] the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." Id. at 2615 (emphasis original).

[35]28 U.S.C. § 157(b)(2)(E).

[36]Stern, 131 S.Ct. at 2614.

11

the "action at issue stems from the bankruptcy itself,"[37] P&F is not entitled under Stern to demand adjudication by an Article III court.

In the Motion, P&F mistakenly classifies Trustee's claim as preference claim and argues that bankruptcy courts cannot adjudicate preference claims against parties that do not file proofs of claim.[38] Nothing contained in the Complaint suggests that Trustee seeks to recover a prepetition preferential transfer under 11 U.S.C. § 547, however.

P&F also classifies Trustee's claim as "a pre-petition contract action"[39] – a dispute about "private rights" between two parties that would exist even in absence of the bankruptcy. When a trustee seeks to vindicate a prepetition "private" right of the debtor, one which is not "closely intertwined with a federal regulatory program Congress has power to enact,"[40] an issue of the bankruptcy court's power to issue a final judgment may indeed arise, depending on other circumstances. P&F fails to identify a prepetition contract it contends is in dispute, however, and in any event, Trustee is *not* seeking to enforce a contract between the estate and P&F. Instead, Trustee seeks to enforce a purely "public right," a right created by Congress and granted to the bankruptcy trustee to bring back into the estate property that was transferred out the estate in violation of the Bankruptcy Code.

---

[37] Id. at 2618.

[38] Motion at 2-3.

[39] Id.

[40] Stern, 131 S.Ct. at 2614 (*quoting* Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 54-55 (1989)).

In its Reply, P&F, without any legal or factual support, declares that Trustee's claim "has more similarity to a fraudulent conveyance action than to a post-petition transfer."[41] Based upon that ungrounded premise, P&F argues that under Stern, this Court cannot enter a final order because "fraudulent conveyance suits [are] quintessentially suits at common law that more nearly resemble state law contract claims brought . . . to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."[42] Under the complex legislative scheme that is bankruptcy law, however, one of the fundamental jobs conferred by Congress upon bankruptcy courts (upon referral) is supervision over the disposition of the estate.[43] An action to recover property transferred out of the estate in violation of a bankruptcy law does not resemble a "quintessential[] suit at common law."[44] The remedy exists solely because Congress created it in enacting bankruptcy laws. Nor is an action to recover a surreptitiously transferred asset brought to "augment" the estate. Rather, the purpose of recovering transferred estate property is to make

---

[41]Reply at 2.

[42]Reply at 2, *quoting* Stern, 131 S.Ct. at 2614 (*quoting* Granfinanciera, 492 U.S. at 56).

[43]The Bankruptcy Code and Rules require bankruptcy court approval of various transactions affecting estate property. See, e.g., 11 U.S.C. § 330 (payments to estate professionals are subject to court approval), § 362 (unless the bankruptcy court grants relief, property of estate is protected by automatic stay), § 363 (trustee's use, sale or lease of property of the estate is subject to court approval), § 364 (estate cannot borrow or incur credit without court approval), § 365 (assumption and rejection of executory contracts is subject to court approval), § 554 (property of estate cannot be abandoned by the trustee without court approval); Bankruptcy Rule 9019 (settlement of disputes concerning estate property requires court approval).

[44]Reply at 2.

13

the estate whole again.[45] The rights and remedies are purely legislative creations – "public rights" – which are constitutionally assigned to non-Article III courts for final adjudication.

Finally, P&F disputes that the funds transferred were funds of the bankruptcy estate, and argues that a dispute over the ownership of the funds is a state law issue that should be heard by an Article III court. That argument is a non-starter. Bankruptcy courts, upon referral, have exclusive *in rem* jurisdiction over property of the estate under 28 U.S.C. § 1334(e).

> Under federal law, a bankruptcy estate includes all of the debtor's "legal or equitable interests" in property at the time the bankruptcy action begins. 11 U.S.C. § 541(a)(1). No doubt this is a capacious definition, suggesting that *even a debtor's nonpossessory, contingent, partial, derivative, and speculative property interests and causes of action convey to the bankruptcy estate*. See, e.g., United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983). Still, under this statutory provision a bankruptcy estate succeeds only to the property interests the debtor actually possessed. And to define those interests—their existence and extent—federal bankruptcy law usually relies on and requires us to reference state property law. See Butner v. United States, 440 U.S. 48, 55–57 (1979).[46]

While property interests are created and defined by state law (or other applicable non-bankruptcy law), whether a property interest is property of the estate depends on Congress's definition of property of the estate under 11 U.S.C. § 541.[47] A dispute over whether property

---

[45]See, e.g., Murphy v. Felice (In re Felice), 480 B.R. 401, 428 (Bankr. D. Mass. 2012) ("Because the property recovered through a § 549 action was already estate property prior to the transfer, all § 549 seeks to do is restore property of the estate to the control of the bankruptcy court for proper administration.").

[46]LTF Real Estate Co. v. Expert South Tulsa, LLC (In re Expert South Tulsa, LLC), 2015 WL 6123222 at *1 (10th Cir. Oct. 19, 2015) (emphasis added).

[47]See In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993) (*abrogated in part* by Law v. Siegel, 134 S.Ct. 1188 (2014)) ("The question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law; however, courts

14

transferred by a debtor/trustee post-petition was actually estate property exists only in a bankruptcy proceeding, and adjudicating such a dispute, even if it requires the application of state law, is a function essential to the execution of the overall bankruptcy scheme.[48] Bankruptcy courts routinely and necessarily apply state law in determining contract and property issues that arise in connection with the administration of bankruptcy estates.[49] The sole fact that a bankruptcy court must interpret state law in order to carry out its statutory duties is irrelevant to the right to an Article III adjudication.[50]

**Recommendation No. 3:   The District Court should deny the Motion.**

A district court may permissively withdraw a reference "for cause shown."[51] In determining whether cause exists, courts consider (1) whether the matter is "core" or "non-

---

must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case"); In re Prudential Lines Inc., 928 F.2d 565, 569 (2d Cir. 1991).

[48]See, e.g., Felice, 480 B.R. at 410-11 ("determining the extent of property of the estate is a proceeding that can only arise under the Bankruptcy Code"); Olivie Development Group LLC v. Ki Chang Park, 2012 WL 1536207 at *4 (W.D. Wash.) ("A bankruptcy court's finding regarding the parties' interests in property is necessarily a function of determining what constitutes property of the estate.")

[49]Bankruptcy courts are frequently required to interpret state law and adjudicate state law issues ancillary to performing core bankruptcy functions. For example, state law issues arise in interpreting contracts; determining rights under landlord-tenant and lease laws; determining validity, extent, or priority of liens against property of the estate; determining exempt property; liquidating state law claims against the estate (except for personal injury/wrongful death claims); and determining rights of setoff.

[50]See also 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.")

[51]28 U.S.C. § 157(d).

core;" (2) whether the bankruptcy court has authority to enter a final judgment in the matter; (3) whether a party has a right to jury trial; and (4) whether withdrawing the reference will promote uniformity of bankruptcy administration; foster economical use of resources; and expedite the bankruptcy process.[52]

  A. This is a "core" proceeding.

A proceeding is "core'" if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."[53] "Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."[54] An action to avoid and recover unauthorized postpetition transfers of estate property cannot arise in a non-bankruptcy context, and the action depends exclusively upon bankruptcy laws, namely §§ 549(a) and 550(a), for a remedy. In addition, determining what is and is not property of the estate is a "core" proceeding.[55] Accordingly, all aspects of this action fall solidly within the rubric of "core" proceedings.

---

[52] See, e.g., Shubert v. Winterhalter, 531 B.R. 546, 550-51 (E.D. Pa. 2015). Courts may also consider whether the party seeking withdrawal is engaging in inappropriate forum shopping. Id.

[53] In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996) (quotation marks and citations omitted).

[54] Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990).

[55] Id. (determination of "whether the marital property is part of the bankruptcy estate is a core proceeding").

16

      B.      <u>The bankruptcy court has authority to enter final judgment.</u>

As discussed in detail above, this action is not one of those rare proceedings that are defined as "core" by 28 U.S.C. § 157(b)(2), but are not amenable to final adjudication by a non-Article III court under <u>Stern</u>. P&F is not entitled to demand trial to and determination by an Article III court.

      C.      <u>P&F does not have a right to a jury trial.</u>

As discussed in detail above, P&F does not have a right to trial by jury on Trustee's claim.

      D.      <u>Denying the Motion will promote uniformity in bankruptcy administration, foster economical use of resources, and expedite the bankruptcy process.</u>

This Court is intimately familiar with the underlying bankruptcy case, the bankruptcy estate, and the interpretation and application of §§ 549 and 550. Five adversary proceedings brought by Trustee against other litigants are pending before this Court, some of which also include § 549 claims. This proceeding has been deferred for a considerable period of time, pending the disposition of other matters that may have allowed this case to be dismissed, but at this point, expedited adjudication is necessary if Trustee is to efficiently and economically complete his administration of the estate.

For all the reasons stated herein, the Court recommends that the Motion be **denied.**

**The Clerk of the Bankruptcy Court is directed to transmit to the Clerk of the United States District Court for the Western District of Oklahoma a copy of this Recommendation, together with a docket sheet and copies of the all pleadings referred to in this Recommendation, and file a certificate of such transmission in this proceeding.**

Respectfully submitted on this 11th day of December, 2015.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

17